## <u>AFFIDAVIT IN SUPPORT OF SEARCH WARRANT</u>

Affiant, Andrew Nowling, after being duly sworn, deposes and states as follows: Affiant is an employee of the United States Department of Justice (DOJ), Drug Enforcement Administration (DEA), within the meaning of Section 878(a) of Title 21, United States Code, that is an officer who is empowered by law to conduct investigations, make arrests, execute search warrants, and seize property in connection with violations of Title 18, United States Code and Title 21, United States Code.  Affiant is a Special Agent (SA) for the DEA, and has been so employed since June 2017.

### I.    <u>TRAINING AND EXPERIENCE</u>

1.  Affiant has received specialized training at the DEA Training Academy in Quantico, Virginia, regarding the identification of narcotic controlled substances and the operation of drug trafficking organizations.  Affiant has also been involved in the investigation of numerous individuals and organizations involved in the manufacturing, distribution, and use of controlled substances.  Affiant has successfully conducted investigations that have resulted in the arrest of drug traffickers and the seizure of significant quantities of drugs.  Affiant has further conducted surveillance operations of drug traffickers and has interviewed numerous persons personally involved in drug trafficking.  Affiant has also

supervised confidential sources during controlled purchases of narcotics. Through this training and experience, Affiant has become familiar with, and has gained a thorough understanding of the methods, manner and means used by individuals engaged in the unlawful manufacturing, trafficking, and use of controlled substances.

2. Affiant makes this affidavit in support of a warrant authorizing a search for the property described in Attachment A. This affidavit does not contain each and every piece of information known to Affiant and other investigators, but rather only information sufficient to establish probable cause to support the requested warrant.

## II.     DESCRIPTION OF PROPERTY TO BE SEARCHED:

3. This application requests authorization to search the following items, each of which are in the possession of the DEA Cleveland District Office:

a. One Silver I-Phone 5C SE [(216) 562-8595, IMSI 310410004003757] (DAUNTEZ BELL)

b. One Black LG smartphone [(312) 722-4643, IMSI 310150820826789] (RAUL RAMIREZ MONTES DE OCA)

c. Black I-Phone 7 Model -A1778 [(216) 544-4419, IMSI 310410939941437 (DAUNTEZ BELL)

d. One Black Motorola phone [(440) 666-0118, IMSI 354142075065971] (RAUL RAMIREZ MONTES DE OCA

e.  One  white  I-Phone  6s  [(515)  401-9922,  IMEI 353800088153818] (PAIGE ANN VANDER WEIDE)

**III.**     **PROBABLE CAUSE FOR SEARCH AND SEIZURE WARRANT**

4.  Affiant  knows,  based  upon  training  and  experience,  that persons  engaged  in  drug  trafficking  require  expedient  forms of  communication  to  contact  suppliers,  couriers,  and customers;  therefore,  continuous  access  to  telephone  and internet  communications,  including  cellular  telephones (traditional,  Smartphones,  and  pre-paid),  and  tablets  (i.e iPads),  is  necessary  to  the  success  of  drug  traffickers. Affiant  also  knows  that  drug  traffickers  frequently  utilize more  than  one  cellular  telephone  at  a  time  in  an  effort  to evade  detection  by  law  enforcement.   Affiant  also  knows  that drug  traffickers  commonly  change  or  drop  phones  on  a  frequent basis,  particularly  in  response  to  enforcement  actions directed  at  co-conspirators.   Further,  Affiant  knows  that drug  traffickers  often  keep  records  relating  to  their associates,  including  addresses,  telephone  numbers,  records relating  to  drug  transactions  and  money,  and  that  the  records are  often  stored  on  the  drug  traffickers'  cellular  phone(s) and/or  other  electronic  devices.

5.  Affiant  knows,  through  training  and  experience,  that  drug traffickers  often  utilize  cameras,  cellular  telephones  with video/photographic  capabilities,  and/or  video  cameras  and

camcorders to record various aspects of their lives, to include their drug trafficking activities.

6. Affiant also knows that drug traffickers often depend upon communications to maintain their extensive contacts throughout the country and abroad. This communications system expedites the transportation of drugs from the main Source of Supply (SOS), through the drug distribution network, and eventually to the end user, the drug user. To do this, continued access to telephone and internet communication is important if not essential to maintaining timely long distance and local contacts.

7. Affiant also knows from both training and experience that telephone and internet communications are important if not essential to drug traffickers due to the distances involved in moving narcotics and coordinating the delivery of those narcotics to couriers and, ultimately, street-level drug dealers. Affiant has personally seized numerous telephonic and internet communication devices from drug traffickers in the past. Information from these devices has provided valuable information regarding suspected criminal associates that has assisted several criminal investigations, including the phone number of the particular device, incoming and outgoing call data, dates and times of phone calls, address

book information (names associated with various phone numbers), and missed, received, and dialed calls. Additionally, Affiant knows that cellular telephones and tablets commonly come equipped with digital cameras that can be used to acquire, store, transfer and transmit images and documents that can be used to facilitate the possession, use, manufacture and distribution of controlled substances.

## BACKGROUND OF INVESTIGATION

8. During early 2017, DEA Cleveland investigators initiated an investigation into the heroin trafficking activities of DAUNTEZ BELL, aka MOJO. During the investigation, investigators came to believe that BELL was importing large amounts of narcotics, both heroin and cocaine, through an unknown source of supply in the Chicago, Illinois area. Investigators were also utilizing a confidential source to make controlled purchases of narcotics from BELL, and during each of these purchases, the CS contacted BELL on **(216) 562-8595**. Through toll analysis and further investigation, investigators came to believe that BELL's Chicago-based source of supply was using phone number **(312) 722-4643**. In early June 2017, investigators initiated a Title III investigation on BELL's **(216) 562-8595** phone. Over the next approximately 30 days, investigators intercepted numerous

drug-related calls and text messages between BELL and his narcotics trafficking associates, to include calls and text messages exchanged with his source of supply, later identified as Raul Ramirez MONTES DE OCA, who was using **(312) 722-4643** and **(440) 666-0118**.  Investigators also learned that BELL was being intercepted on a Title III investigation being conducted by another agency, where BELL was using **(440) 666-0118**.  During the course of the investigation, investigators also identified Paige VANDER WEIDE, who investigators believed was a courier for MONTES DE OCA.  Prior to MONTES DE OCA moving from Chicago to Cleveland in mid-June 2017, investigators learned that VANDER WEIDE had been in contact with First Energy Ohio, and had set up electric service at the house where MONTES DE OCA moved in.  During the establishment of service with First Energy, VANDER WEIDE provided a phone number of **(515) 401-9922**.

## INITIATION OF TITLE III ON BELL

9.  On June 14, 2017, DEA SA Sean O'Malley appeared before U.S. District Judge James S. Gwin for the purpose of securing a court order authorizing the interception of wire and

electronic communications on **(216) 562-8595**, which was known to be used by DAUNTEZ BELL.  Interception on Target Telephone 1 began on June 15, 2017.

10.  Between June 15, 2017, and July 13, 2017, interception over **(216) 562-8595** resulted in the interception of over 200 drug-related voice conversations and text messages.  Some examples of drug-related calls and text messages between the phones are listed below.

11.  On June 16, 2017, at approximately 9:54 A.M., BELL placed an outgoing phone call on **(216) 562-8595** to MONTES DE OCA (312) 722-4643.  During the conversation, BELL asked an unknown male for "Beto," which is a common Hispanic nickname.  BELL was informed that "Beto" was still asleep.  A short time later, an individual that sounded to be a minor child stated, "What's up, Mojo?" BELL replied, "Tell ya dad I said I'm about to go to Atlanta for the weekend. I'll be back Monday." A short time later, the minor child stated, "My dad said ok."

12.  On June 20, 2017, at approximately 10:03 p.m., BELL received a call from MONTES DE OCA at (440) 666-0118.  During this call, MONTES DE OCA used a minor child to translate from the Spanish language to the English language[1].  Throughout the

---

[1] Investigators believe that the minor child referenced in this call is the same minor child referenced in the call in paragraph 8. This belief is based on the reference to "Beto," which Investigators believe to be the name BELL uses to refer to the minor child, in both phone calls,

call, the minor child is heard speaking back and forth to MONTES DE OCA in the Spanish language. At the beginning of the conversation, the minor child told BELL, who the child referred to as "Mojo," that the minor child's father (MONTES DE OCA) wanted to know if BELL could bring MONTES DE OCA some weed (marijuana). BELL said that he could come tomorrow. Later in the conversation, BELL asked, "Hey, B, Beto… Ask your dad when, when is my car coming?" In Spanish, the minor child is heard asking MONTES DE OCA, "When is his car going to arrive?," then the minor child replied to BELL, "Friday." Later, BELL stated, "Tell him to call TJ and tell them to hurry up man, or we missing… Tell him I said, 'He need to hurry up…'" The minor child is heard speaking in Spanish to MONTES DE OCA, "He says, 'they need to hurry up, because he needs his car,'" then the minor child replied to BELL, "Okay, he'll, he'll… He'll see." The minor child asked BELL, "What, what did you think about the other thing?" BELL responded, "Good." The minor child is heard telling MONTES DE OCA in Spanish, "He said that it's good." Then the minor child said to BELL, "Uh, get, get the money so, so…[U/I] Chicago." BELL stated, "Hey man… Tell them I said, 'I ain't giving them. I ain't making. I ain't spending my money.' Either they gonna

front it or I don't want it." Later, BELL repeated, "Tell him
to tell his people, 'if, if they not gonna front it, I don't
want it.' I'm not spending my money, man. Tell 'em I said,
'front it, cool. If not, fuck 'em.'" The minor child appeared
to have a difficult time understanding BELL. The minor child
asked, "If you don't fund it?" BELL responded, "If they don't,
if they don't front it, I don't want it." The minor child is
overheard speaking to MONTES DE OCA in Spanish, "Uh, that if
they don't [U/I]. He doesn't want, doesn't want to spend his
money. Like if they don't… Like if a lot of people get it, he
wants it." Then, MONTES DE OCA is heard responding to the
minor child in Spanish, "Oh, Okay. If he wants to first [U/I].
[U/I] pay for that, because if not [U/I]… No, tell him that
it's good, that it's…" The minor child then replied to BELL,
"Yeah, my, my dad says it's good." BELL replied, "I said, 'no
front, no want.'" The minor child stated, "No… Yeah, I already
told him." BELL continued, "If they ain't gonna front it…
[U/I] ain't gonna take none of my money. They can front it
and I'll bring the money back. They send the stuff to Ohio,
I sell it, and take them the money back. I ain't taking my
money to Chicago first." The minor child is overheard telling
MONTES DE OCA in Spanish, "He doesn't want to take his money
all the way to Chicago." BELL stated, "Alright, I gotta go."
MONTES DE OCA is heard telling the minor child in Spanish,

"Okay, tell him that we'll talk tomorrow. Once he comes tomorrow." The minor child replied to BELL, "He said tomorrow you'll talk." BELL replied, "Alright."

13.  On July 11, 2017, between approximately 6:26 p.m. and 6:43 p.m., BELL and MONTES DE OCA exchanged a series of text messages between **(216) 562-8595** and **(440) 666-0118**.  The exchange began with MONTES DE OCA asking, "How are you mojo"? BELL replied, "See yu later".  MONTES DE OCA replied, "Com and see me, you'll like it", followed by, "Bring me money for the TJ".  BELL replied, "Ok".  BELL then stated, "I'm waiting on one of my friends for TJ", to which MONTES DE OCA replied, "Okay, my friend is here".  BELL replied, "Ok".  Affiant believes that this exchange represented MONTES DE OCA asking BELL to bring drug proceeds to MONTES DE OCA's home.  Affiant also believes that MONTES DE OCA's reference to his "friend" being there was concerning the arrival of VANDER WEIDE, who apparently came to Cleveland the day prior.  Affiant now believes that VANDER WEIDE brought an unknown quantity of narcotics, and that was what MONTES DE OCA was referring to when he told BELL, "Come and see me, you'll like it."  At approximately 10:48 p.m., BELL, using **(216) 562-8595**, sent MONTES DE OCA a text message, which stated, "See you first thing in the am Made no money today".  The two then exchanged

several more texts agreeing to meet on the morning on July 12th.

## INTERCEPTION OF (216) 544-4419

14. During July, 2017, Northern Ohio Law Enforcement Task Force (NOLETF) initiated a Title III investigation on a phone used by Wayne Nix.  During interception of that line, investigators intercepted numerous conversations between Nix and BELL, who was using **(216) 544-4419**.

15. During one series of phone calls between Nix and BELL, the two continued to discuss the arrest of a mutual acquaintance in apartment 404 of the Deville Apartment complex, where BELL also maintained a residence.  During these calls, it appeared that, since the arrest of the mutual acquaintance, BELL was using apartment 404 to store money and a firearm.  For example, on July 6, 2017, at approximately 9:10 p.m., Nix called BELL at **(216) 544-4419**. During the call, Nis asked, "You at the building?" BELL responded, "Nahh, why? What's wrong?" Nix asked, "You, umm, you left a roscoe up there?" BELL replied, "Yeah." Nix stated, "Alright. Yeah, 'cause his (the individual who was arrested) mother was up there (in apartment 404)."  BELL stated, "I left a couple of things up there."  Nix replied, "Alright, I am about to call."  BELL replied, "Ahh, yeah, tell her she went in that bedroom, it's

a shoe box in there bruhh." Nix responded, "Alright, I am about to call her." Affiant believes that Nix told BELL that their acquaintance's mother had found a firearm (roscoe) in apartment 404 that belonged to Bell. Further, Affiant believes that BELL told Nix that BELL keeps other items in apartment 404 as well, and BELL asked Nix to tell their acquaintance's mother that a shoe box in a bedroom belonged to BELL.

### SEARCH WARRANTS ON JULY 14, 2017

16. On July 14, 2017, Affiant and other investigators executed search warrants, issued by Magistrate Judge David Ruiz, at four locations, including 6051 Castlehill Drive, Highland Heights, Ohio (RAUL RAMIREZ MONTES DE OCA), 23351 Chagrin Boulevard, Apartment 104, Beachwood, Ohio (DAUNTEZ BELL), 23351 Chagrin Boulevard, Apartment 404, Beachwood, Ohio (DAUNTEZ BELL), and 26900 George Zeiger Drive, Apartment 213, Beachwood, Ohio (DAUNTEZ BELL). DEA Special Agent Sean O'Malley submitted a 61 page affidavit in support of the request for search warrants at 6051 Castlehill Drive, Highland Heights, Ohio, 23351 Chagrin Boulevard "Apartment 104 and 404" Beachwood, Ohio, and 26900 George Zeiger Drive, Apartment 213, Beachwood, Ohio, which is incorporated herein.

17. Prior to the execution of the search warrant at 6051 Castlehill Drive, MONTES DE OCA was taken into custody on the street near the residence.  At the time he was taken into custody, MONTES DE OCA was holding the black Motorola cell phone assigned phone number (440) 666-0118 in his hand. MONTES DE OCA had also been observed talking on the phone repeatedly during the time investigators were watching MONTES DE OCA prior to him being taken into custody.

18. Pursuant to the search of 6051 Castlehill Drive, (MONTES DE OCA's residence), investigators also seized one Apple I-Phone, phone number (515) 401-9922, which was taken from PAIGE VANDER WEIDE's person, and one black LG cellular smart phone (312) 722-4643, which was seized from the garage of the residence.  The garage also contained a black Nissan Versa, which was found to contain two kilograms of cocaine inside of a false compartment in the floor of the vehicle.

19. Pursuant to the search and discovery of cellular phone (515) 401-9922 seized from VANDER WEIDE on July 14, 2017, voluntary consent was obtained from VANDER WEIDE to search the contents of her cellular phone. Upon searching VANDER WEIDE's cellular phone, several drug related text messages were observed by investigators.

**ARREST OF DAUNTEZ BELL ON JULY 13, 2017**

20.  Dauntez BELL was arrested on July 13, 2017, in the area of the Garden apartments on Garden Drive in Euclid, Ohio. Upon BELL's arrest, an Apple I-phone (216) 562-8595 was discovered on his person, and a second Apple I-phone (216) 544-4419 was discovered inside the black Toyota Tundra driven by BELL on the center console pursuant to the vehicle inventory.

## INFORMATION STORED ON CELLULAR TELEPHONES AND TABLETS

21.  Based upon training and experience, Affiant knows that drug traffickers utilize cellular telephones and tablets (i.e. iPads) to store records, electronic receipts, notes, ledgers, contact information, customer lists, bank statements, physical addresses, e-mail addresses,  to retain and transmit photographs, text messages and e-mail messages, and to access the internet (to track packages), and to communicate with other drug traffickers concerning the purchasing, transportation, sale,  distribution or possession of controlled substances.

## CONCLUSION

22.  Based upon the above-listed facts, Affiant believes that DAUNTEZ BELL, RAUL RAMIREZ MONTES DE OCA and PAIGE VANDER WEIDE have committed violations of Federal and State drug laws, have knowingly and intentionally possessed with intent

to distribute heroin, knowingly and intentionally possessed with intent to distribute cocaine, and conspired to distribute cocaine. Affiant believes the phones identified in Section II hereof, were used to facilitate the distribution of cocaine, in violation of 21 U.S.C. Sections 846 and 841 (a) (1). Affiant further believes that evidence of said violations is presently being concealed on the cellular telephones identified in Section II hereof, including, but not limited to, the phone number of the particular device, incoming and outgoing call data, dates and times of phone calls, address book information (names associated with various phone numbers), missed, received, and dialed calls, text messages, web browsing history, instant messages and digital images and/or videos, all and any of which relates to and constitutes evidence of the foregoing violations.

_____
Andrew Nowling
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on this _11th_ day of August, 2017.

_____
Thomas M. Parker
United States District Judge
Northern District of Ohio